**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 2, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARGARET J. THOMAS,

Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration,

Defendant-Appellee.

No. 04-7141
(D.C. No. CIV-03-594-P)
(E.D. Okla.)

**ORDER AND JUDGMENT** *

Before **HENRY, ANDERSON** , and **TYMKOVICH** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Margaret J. Thomas appeals from the district court's order affirming the Commissioner's decision that she is not entitled to Supplemental Security Income (SSI) benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. Because we conclude that the administrative law judge (ALJ) in this case did not apply the correct legal standards in making her decision, we reverse and remand for further proceedings.

## I.

Mrs. Thomas, who was 41 years old in 2003, has never performed work that meets a level considered to be substantial gainful activity under the Social Security Act. She has a high school education and completed a one-year vo-tech business course, but did not qualify for a certification. Her only job has been as a toy assembler at a sheltered workshop. Mrs. Thomas alleges that she suffers from arthritis, carpal tunnel syndrome, brain injury, obesity, and depression that prevent her from engaging in substantial gainful employment. Her fourth application for SSI benefits was denied initially and on reconsideration. Following a hearing, the ALJ determined that Mrs. Thomas is not disabled at step five of the five-step sequential evaluation process. *See Williams v. Bowen,* 844 F.2d 748, 750-52 (10th Cir. 1988). The ALJ found no medical support for Mrs. Thomas's claims of arthritis, carpal tunnel syndrome, or brain injury, and she does not challenge those rulings. As to the claims of disabling obesity and

depression, the ALJ concluded that Mrs. Thomas has the severe impairment of morbid obesity but that her mental impairments cause only "mild functional limitations in the areas of . . . daily living and concentration, persistence, and pace." Aplt. App. Ex. 4 at 25. The ALJ concluded that, despite her obesity, Mrs. Thomas retains the residual functional capacity (RFC) to perform sedentary work, limited to never climbing, stooping, kneeling, crouching, or crawling and only occasional pushing and pulling. *See id.* After consulting a vocational expert (VE), the ALJ concluded that Mrs. Thomas is able to perform several sedentary jobs and is, therefore, not disabled as defined in the Social Security Act. The Appeals Council denied review, thus the ALJ's decision became the final decision of the Commissioner. Mrs. Thomas filed a complaint in the district court, and the district court affirmed the Commissioner's decision. Mrs. Thomas appeals, contending that the ALJ failed to consider the effect of her non-exertional limitations and to recognize all of her severe mental impairments.

## II.

Our standard of review in social security cases is well-settled.

> "We review the [Commissioner's] decision to determine whether it is supported by substantial evidence and whether the [Commissioner] applied the correct legal standards." *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir. 1994). We must examine the record closely to determine whether substantial evidence supports the [Commissioner's] determination. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91

-3-

S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quotation omitted).  In
addition to a lack of substantial evidence, the [Commissioner's]
failure to apply the correct legal standards, or to show us that she has
done so, are also grounds for reversal.  *Washington,* 37 F.3d at 1439.

*Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).  "In evaluating the

appeal, we neither reweigh the evidence nor substitute our judgment for that of

the agency."  *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th

Cir. 1991).

We bear in mind, however, that, because the Commissioner's decision in

this case was made at step five of the sequential process, it was the

Commissioner's burden to prove that Mrs. Thomas can perform work at a level

lower than her past relevant work.  *See Thompson v. Sullivan,* 987 F.2d 1482,

1491 (10th Cir. 1993).  We also note that an ALJ's decision must be evaluated

based solely on the reasons stated in that decision.  *See Burlington Truck Lines,*

*Inc. v. United States,* 371 U.S. 156, 168-69 (1962).

**III.**

**A.  Application of Social Security Ruling 96-9p.**  Mrs. Thomas first

argues that the ALJ's opinion is internally inconsistent because, although the ALJ

found that Mrs. Thomas may "never climb, stoop, kneel, crouch, and crawl," the

ALJ also stated that she could "perform *more than* the full range of sedentary

work." Aplt. App. Ex. 4 at 25 (emphasis added).  Mrs. Thomas asserts that the

ALJ failed to follow Social Security Ruling 96-9p, which notes that most

unskilled sedentary occupations require an ability to stoop.  Under that ruling, "[a] complete inability to stoop it would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply."  SSR 96-9p, 1996 WL 374185, *8.

Although we agree that the ALJ's decision is ambiguous, we note that in her formal findings, the ALJ did, in fact, find that Mrs. Thomas's "exertional limitations do not allow her to perform the full range of work," Aplt. App. Ex. 4 at 32.  Accordingly, the ALJ consulted a VE to give an opinion regarding what specific sedentary jobs Mrs. Thomas could perform in the national economy given her physical limitations.  *Id.* at 31.  In the hypothetical given to the VE, the ALJ stated that Mrs. Thomas was limited in "some pushing and pulling" and could "never climb, stoop, kneel, crouch, or crawl."  *Id.* at 66.  The VE opined that Mrs. Thomas could still perform at least three different jobs with those limitations.  *Id.* at 66-67.

Ruling 96-9p states that "a finding that an individual has the ability to do less than a full range of sedentary work does not necessarily equate with a decision of 'disabled'," SSR 96-9p, 1996 WL 374185, *1; thus the ALJ may consult with a VE for consideration of what jobs a claimant with a particular limitation can perform, *see id.* at *8.  The VE's testimony that Mrs. Thomas could still perform certain unskilled sedentary jobs despite her limitations constitutes

substantial evidence upon which the ALJ could rely for her decision, and the fact that the ALJ consulted a VE demonstrates that the ALJ properly applied Ruling 96-9p even though she did not mention the ruling in her written decision.

**B. Severe mental impairments.** Mrs. Thomas next asserts that the ALJ erred in determining that she has no severe mental impairments.

> "When there is evidence of a mental impairment that allegedly prevents a claimant from working, the [Commissioner] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse v. United States Dep't of Health & Human Servs.,* 49 F.3d 614, 617 (10th Cir. 1995). Documentation is made by completing a PRT form, which the ALJ must attach to his written decision. "[T]he record must contain substantial competent evidence to support the conclusions reached on the PRT form[, and] if the ALJ prepares the form himself, he must 'discuss in his opinion the evidence he considered in reaching the conclusions expressed on the form.'" *Id.* at 617-18 (quoting *Washington,* 37 F.3d at 1442).

*Winfrey*, 92 F.3d at 1024. The ALJ noted the required procedure and included in the administrative record a PRT prepared by a non-examining, agency-hired consulting psychologist. An impairment is "not severe" when the "'medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987) (quoting SSR 85-28, 1985 WL 56856). Mrs. Thomas contends that the ALJ did not fully consider the opinions of her treating and consulting physicians when determining whether she has a severe mental impairment.

-6-

The medical record shows that Dr. Sturch, Mrs. Thomas's treating physician, diagnosed and treated her for depression and "thought disorders." Aplt. App. Ex. 4 at 164-70. It also shows that, although she responded well to antidepressant medication, Mrs. Thomas stated that she could not afford the medication and took it only when Dr. Sturch gave her samples. *See id.* ; *and see id.* at 155 (note by non-examining consulting psychologist acknowledging that Dr. Sturch gave Mrs. Thomas samples of medication "when he has them" and that Mrs. Thomas has "lowered concentration and memory which appears to be from the depression. With ongoing medications, it is felt she would fare much better.").

At the Commissioner's request, Mrs. Thomas was examined by consulting psychiatrist Dr. Mynatt. Dr. Mynatt conducted psychological tests for intellectual functioning during which Mrs. Thomas was unable to recall items a few minutes after hearing them and was unable to count backwards, subtract double-digit numbers, or perform simple multiplication and division tasks. Dr. Mynatt diagnosed "[m]ajor depressive disorder" with "particular difficulties with memory and concentration, which are likely symptoms of depression," and opined that her condition "is not expected to improve significantly within the next 12 months."

Aplt. App. Ex. 4 at 142. Dr. Mynatt assigned Mrs. Thomas an LOF [1] score of 58, indicating that she has moderate difficulties in performing in a social or occupational setting. *See Langley v. Barnhart*, 373 F.3d 1116, 1122 n.3 (10th Cir. 2004).

The ALJ ignored the LOF score and totally rejected Dr. Mynatt's opinion, stating, "the conclusion was based solely on the subjective findings during the evaluation. Given the lack of objective findings, the [ALJ] simply cannot credit the claimant's allegations." Aplt. App. Ex. 4 at 24. The ALJ instead relied on the non-examining consulting psychologist's PRT assessment, based only on medical records, that Mrs. Thomas's mental impairment is "not severe" and that her difficulties in maintaining concentration, persistence, or pace were only "mild." *See id.* at 27, 143, 153. We conclude that the ALJ did not properly evaluate Dr. Mynatt's opinion.

The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective "tests"; those findings "may rest either on observed signs and

_____

[1] "LOF" is an abbreviation for a level of functioning or global assessment of functioning score, and is also sometimes called a GAF score. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. A GAF score of 51-60 indicates moderate symptoms, such as a flat affect, or moderate difficulty in social or occupational functioning." *Langley,* 373 F.3d at 1122 n.3 (citation and quotation marks omitted).

symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing 20 C.F.R. Subpart P, App. 1 § 12.00(B)); *Langley*, 373 F.3d at 1122 (same). The ALJ's approach of rejecting Dr. Mynatt's opinion because he based it, in part, on Mrs. Thomas's responses to his psychological tests involving memory and concentration impermissibly put the ALJ in the position of judging a medical professional on the assessment of medical data. *See Winfrey*, 92 F.3d at 1022. The ALJ cannot reject Dr. Mynatt's opinion solely for the reason that it was based on Mrs. Thomas's responses because such rejection impermissibly substitutes her judgment for that of Dr. Mynatt. *See id.* We note, however, that Dr. Mynatt did not state whether Mrs. Thomas's LOF score actually affected her ability to function in an occupational setting or affected only her social functions. If the ALJ believes that the medical record regarding Mrs. Thomas's mental impairments is insufficient and needs to be further developed, the ALJ must do so. *See Robinson*, 366 F.3d at 1084 ("If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available."); 20 C.F.R. § 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or

ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.").

Further, a consulting, examining physician's testimony is normally supposed to be given more weight than a consulting, non-examining physician's opinion. *See Robinson*, 366 F.3d at 1084 ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.") (citing 20 C.F.R. § 416.927(1), (2) and SSR 96-6p, 1996 WL 374180, at *2). On remand, if there is still a conflict between non-examining and examining consultant's opinions, the ALJ must give adequate reasons if she again rejects the latter in favor of the former. *See id.*

Finally, we address the Commissioner's contention that the ALJ's findings must be upheld based on her view that Dr. Sturch's notes "show that Appellant's depression was controlled with medication and that she was doing well." Aplee. Br. at 25. A review of the medical record shows that depression and thought disorders were a continuing problem during the period that Dr. Sturch treated Mrs. Thomas, and he tried several kinds of medication. Despite acknowledging that Mrs. Thomas was diagnosed and prescribed medication for depression, the ALJ failed to comment on the important evidence that treatment was inconsistent

-10-

because of Mrs. Thomas's apparent inability to afford the medications. In arriving at a disability decision, the ALJ "must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Whether a person is being consistently treated with available medication is important probative information. As the Fifth Circuit has stated, "the medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered. . . . To a poor person, a medicine that he cannot afford to buy does not exist." *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987) (footnotes omitted).

Because the VE opined that individuals could not perform the unskilled, sedentary jobs he listed if "problems with their short-term memory" caused them to "have a hard time remembering instructions" or if an individual "had problems with her ability to concentrate and focus on the task at hand such that the individual would have errors in their job," Aplt. App. Ex. 4 at 68, we conclude that the ALJ's errors require remand for further development and discussion of the medical record regarding Mrs. Thomas's mental impairments and/or further consideration and weighing of the medical evidence using the proper legal standards. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all

-11-

of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." (bracket and quotation marks omitted)).

The judgment of the district court is REVERSED, and the case is REMANDED to the district court with instructions to remand to the Commissioner for further proceedings.

Entered for the Court


Stephen H. Anderson
Circuit Judge