**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 10, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

HARLEY J. SITSLER,

        Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner, Social Security
Administration,

        Defendant-Appellee.

No. 10-5033
(D.C. No. 4:08-CV-00592-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **PORFILIO** and **BRORBY**, Senior Circuit
Judges.

---

Harley J. Sitsler appeals from a district court order affirming the

Commissioner's denial of his applications for Social Security Disability and

Supplemental Security Income benefits.  Exercising jurisdiction under 28 U.S.C.

§ 1291 and 42 U.S.C. § 405(g), we reverse and remand for further consideration.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel.  It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Mr. Sitsler was 22 years old on his alleged disability onset date, at which point he had a seventh- or eighth-grade education and work experience at the heavy exertional level. He claimed disability due to arthritis in his back, hands, wrists, and hips; scoliosis of the spine; and anxiety disorder. He also alleged that he suffered from polymorphic-light disorder, as well as headaches and fatigue due to Lyme's disease.

Mr. Sitsler's applications for benefits were denied initially and on reconsideration, after which he requested a hearing before an administrative law judge (ALJ). In rendering a decision, the ALJ followed the standard five-step sequential-evaluation process to determine whether Mr. Sitsler was disabled. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988). The ALJ found that claimant had the severe impairments of arthralgia, anxiety, and status post Lyme's disease, but that he did not have an impairment or combination of impairments that meets or medically equals any of the listed impairments. The ALJ addressed the credibility of Mr. Sitsler's claims of disabling pain and other symptoms, stating that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but . . . claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Aplt. App., Vol. 2 at 23. In support of this credibility finding, the ALJ noted that all of Mr. Sitsler's x-rays and MRIs were negative or

-2-

normal and that "the medical evidence in the record consist[ed] of primarily

subjective complaints." *Id.* at 24. The ALJ also cited the following additional

evidence:

> The claimant testified that he sit[s] in the house all day however,
> medical notes dated February 22, 2007 state that the claimant plays
> outside with his kids ages 2 and 4. The claimant testified that he
> cares for his children while his wife works. A questionnaire
> submitted by the claimant's attorney states that the claimant has
> swelling of the knees that prevents the claimant from driving. There
> is no objective evidence to show any swelling with the medical
> evidence stating that there was no edema of legs or joints. The
> claimant sought mental health treatment on one occasion for intake
> and did not return for follow-up treatment. The claimant's medical
> evidence shows subjective complaints of pain however, there are no
> subjective tests to indicate the claimant has the severity of
> impairments to prevent him from substantial gainful activity.

*Id.* at 24-25 (citations omitted). Elsewhere in the decision, the ALJ made other

findings regarding Mr. Sitsler's daily activities[1]:

> The claimant stated in his disability reports that he is able to care for
> his personal needs. He testified that he cares for his two small
> children while his wife works. One child is in school part of the day.
> He testified that he is able to do some house work such as dusting
> and vacuuming. The claimant can drive a car, go shopping, pay bills,
> count change, and use a checkbook per his disability questionnaires.
> . . . .

---

[1]     Although the ALJ did not make these additional findings in the context of his credibility analysis, he tied them to his assessment of Mr. Sitsler's RFC, the determination of which was based in part on the ALJ's assessment of claimant's credibility. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (noting "credibility and RFC determinations are inherently intertwined"). In any event, Mr. Sitsler does not contend that these findings are not closely linked to the ALJ's credibility determination. *See Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008).

The claimant reported his hobbies as computer games and chess. The claimant states that he watches television all day long.

*Id.* at 21-22 (citation omitted). Based on this evidence, the ALJ concluded that "the claimant's complaints are not fully credible to the extent of his ability to work." *Id.* at 25.

The ALJ also addressed a medical opinion from Mr. Sitsler's treating physician, Dr. Mease. Among other limitations, Dr. Mease concluded that during an eight-hour work day Mr. Sitsler could sit for only four hours and stand or walk for only one hour. He also stated that claimant's use of his hands for repetitive movement was limited, and he indicated a marked impairment in Mr. Sitsler's concentration due to his pain and his pain medications. Regarding Dr. Mease's opinion, the ALJ found:

> The claimant presented himself to his physician on September 7, 2007 for "paperwork to be filled out for Social Security disability". The claimant had no previous treatment notes from this physician since October 25, 2006, nearly one year previous when he was treated for shoulder pain. . . . The doctor apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints.

Aplt. App., Vol. 2 at 24. The ALJ did not expressly assign a particular weight to Dr. Mease's opinion, or to any other medical opinion in the record.

At the hearing the ALJ had elicited testimony from a medical expert, Dr. Krishnamurthi, who opined that Mr. Sitsler had an RFC to sit for six hours in

-4-

an eight-hour workday; stand and walk for four hours in an eight-hour workday; frequently lift ten pounds and occasionally lift twenty pounds.  Dr. Krishnamurthi added that claimant should avoid direct sunlight as much as possible.  The ALJ next asked a vocational expert (VE) whether there were jobs in the national economy that a hypothetical person could do with the limitations in Dr. Krishnamurthi's RFC assessment.  The VE initially testified that RFC would allow for a full range of sedentary and a reduced range of light work.  The VE then identified representative light and sedentary jobs such a hypothetical individual could do, including the sedentary jobs of semiconductor assembler and clerical mailer.  The VE testified that there are 6,000 semiconductor-assembler and 5,000 clerical-mailer jobs in the regional economy, as well as 65,000 semiconductor-assembler and 80,000 clerical-mailer jobs in the national economy.

Mr. Sitsler's counsel asked the VE to add to the limitations in Dr. Krishnamurthi's RFC assessment the additional limitations in a mental RFC assessment (MRFCA) that had been completed by Dr. Smith, an agency consultant.  The MRFCA included marked limitations in understanding and remembering detailed instructions; carrying out detailed instructions; and interacting appropriately with the general public.  The VE testified that these additional limitations would not affect the occupation base.  The ALJ asked the VE whether the jobs he had identified were "uncomplicated jobs requiring routine supervision?"  Aplt. App., Vol. 3 at 685.  The VE responded, "Yes, Your Honor.

-5-

They would be simple . . .; they would be, also, indoors; they would be not dealing with the general public." *Id.* at 686. The VE also testified that a hypothetical individual with the limitations in Dr. Mease's RFC assessment would not be able to return to past relevant work or do other work in the national economy, primarily because such a person could not work a full eight-hour day.

The ALJ determined that Mr. Sitsler had an RFC

> to lift, carry, push, or pull 10 pounds occasionally and less than 10 pounds frequently; stand or walk 2 hours in an 8-hour workday; and sit 6 hours in an 8-hour workday and is unable to deal with the general public and would require routine supervision.

Aplt. App., Vol. 2 at 22. The ALJ concluded that, with this RFC, Mr. Sitsler was unable to perform his past relevant work, but he could perform the semiconductor-assembler and clerical-mailer jobs, which exist in significant numbers in the national economy. Consequently, the ALJ found at step five of the sequential-evaluation process that Mr. Sitsler was not disabled. Although the ALJ cited the VE's testimony as support for his conclusion there were other jobs Mr. Sitsler could perform, the ALJ never asked the VE a hypothetical question including claimant's age, education, and work experience, as well as all of the limitations in his RFC, as determined in the ALJ's decision.

After the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. Mr. Sitsler sought review in the district

-6-

court, where the parties agreed to proceed before a magistrate judge. The district court entered judgment in favor of the Commissioner and claimant appealed.

**Standard of Review**

We review the Commissioner's "decision only to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence in the record." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance. We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.

*Cowan v. Astrue*, 552 F.3d 1182, 1185 (10th Cir. 2008) (quotation omitted).

**Discussion**

On appeal, Mr. Sitsler argues that the ALJ did not properly evaluate his credibility or the medical opinions, and the ALJ's non-disability determination at step five is not supported by substantial evidence because the ALJ failed to ask the VE a proper hypothetical question. We reverse and remand for further proceedings because, in evaluating Mr. Sitsler's credibility, the ALJ failed to discuss particularly probative, uncontroverted evidence and mischaracterized other evidence in the record. In addition, because the ALJ tied his rejection of Dr. Mease's medical opinion to his separate assessment of claimant's credibility,

-7-

our remand on the first issue also calls into question the ALJ's evaluation of the treating physician's opinion. Finally, we caution the ALJ on remand to heed the requirements for eliciting substantial evidence in the form of VE testimony.

## Credibility Analysis

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan*, 552 F.3d at 1190 (quotations, citation, and brackets omitted). The ALJ found that Mr. Sitsler's allegations regarding the severity of his pain and his other symptoms were not entirely credible. Mr. Sitsler does not challenge the ALJ's finding that the objective medical evidence does not support his subjective allegations of disabling symptoms. But because the ALJ found that his medically determinable impairments could reasonably be expected to produce the alleged symptoms, the ALJ was required to consider relevant evidence in addition to the absence of objective medical evidence. *See Luna v. Bowen*, 834 F.2d 161, 164-65 (10th Cir. 1987) ("[T]he absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations." *Id.* at 165.).

Although the ALJ listed the factors relevant to a credibility determination, *see* 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3), Mr. Sitsler contends that the ALJ failed to properly evaluate these factors. Some of his arguments ask this court to reweigh the evidence, but two of the issues he raises have merit. First, the ALJ failed to expressly consider his consistent use of prescription pain medication. Second, the ALJ mischaracterized the evidence of his daily activities.

As the ALJ noted, the medication a claimant takes to alleviate pain and other symptoms is one factor relevant to a credibility determination. It is true that an ALJ need not do a "factor-by-factor" analysis in assessing credibility. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). But Mr. Sitsler contends that his pain medication prescriptions were uncontroverted, particularly probative evidence the ALJ was required to discuss. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). On this record, we agree. In *Hardman v. Barnhart*, 362 F.3d 676, 680 (10th Cir. 2004), we held that, in assessing the credibility of a claimant's complaints of disabling pain, "[i]t was error for the ALJ to fail to expressly consider claimant's persistent attempts to find relief from his pain, his willingness to try various treatments for his pain, and his frequent contact with physicians concerning his pain-related complaints." And in *Hamlin v. Barnhart*, 365 F.3d 1208 (10th Cir. 2004), noting that the claimant's medical records were "replete with his reports of pain and of prescriptions and refills for medication,"

*id.* at 1221, we concluded that the other evidence cited by the ALJ was "insufficient to undermine his pain allegations," *id.* at 1222. Here the record is also replete with prescriptions and refills for pain medication, including narcotics. This is evidence the ALJ should have expressly considered and weighed in determining whether Mr. Sitsler's complaints of disabling pain were credible. *See Clifton*, 79 F.3d at 1010.

Mr. Sitsler also argues the ALJ mischaracterized the extent of his daily activities, ignoring the qualifications and limitations he consistently reported. The record reflects that Mr. Sitsler testified or otherwise reported that he has help from relatives in caring for his children; he usually has no energy to do housework; he makes only simple meals; he shops for 1-2 hours at most; he washes dishes for only a few minutes; he vacuums only once a week for a few minutes; and he does not drive very much. In contrast, the ALJ's findings regarding Mr. Sitsler's activities included none of these limitations. We have criticized this form of selective and misleading evidentiary review, holding that an ALJ cannot use mischaracterizations of a claimant's activities to discredit his claims of disabling limitations. *See Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 742-43 (10th Cir. 1993) (ALJ took claimant's testimony out of context, selectively acknowledged only parts of her statements, and presented his findings as accurate reflections of her statements); *see also Talbot v. Heckler*,

814 F.2d 1456, 1462, 1464 (10th Cir. 1987) (ALJ improperly based conclusion claimant could do light work on mischaracterization of his activities).

Although we will not upset an ALJ's credibility determination that is closely and affirmatively linked to substantial evidence, here the ALJ's analysis was flawed both by his reliance on mischaracterizations of the evidence and by his failure to consider the uncontroverted evidence of claimant's prescription pain medications. *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) ("[T]he ALJ's evaluation of plaintiff's subjective complaints was flawed by his reliance on factors that were not supported by the record and by his failure to consider other factors that were supported by the record."). Therefore, we reverse and remand, directing the ALJ to properly evaluate the evidence with respect to claimant's credibility. In doing so, we emphasize that we are not expressing an opinion as to the weight the Commissioner should give to Mr. Sitsler's claims of pain and other symptoms, as that is an issue for the Commissioner to determine after properly evaluating the evidence and considering the relevant factors.

## Medical Opinion Analysis

Mr. Sitsler argues that the ALJ did not perform a proper evaluation of any of the medical opinions in the record.[2] His primary contention is that the ALJ

---

[2]  Mr. Sitsler also complains that the ALJ failed to discuss portions of the medical evidence, but these contentions once again ask this court to reweigh the evidence, which we cannot do.

failed to assign Dr. Mease's opinion a particular weight and failed to support his rejection of that opinion with good reasons based on the relevant factors. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082-83 (10th Cir. 2004) (holding ALJ errs in failing to articulate weight given to a treating physician's opinion based on relevant factors).

The process an ALJ must follow in weighing a treating physician's opinion is clear:  the ALJ "must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is 'no,' then the inquiry at this stage is complete." *Id.* at 1082 (quotations and citation omitted).  But if the answer to the first inquiry is yes, then the ALJ must "confirm that the opinion is consistent with other substantial evidence in the record." *Id*. (quotation omitted).  Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the relevant factors. *See id*.  The factors include the length, frequency, nature, and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization; and other factors tending to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d). Ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

-12-

treating source's medical opinion and the reasons for that weight." *Hamlin*, 365 F.3d at 1215 (quotation omitted).

Mr. Sitsler's first contention fails because, although the ALJ did not expressly assign a weight to Dr. Mease's opinion, it is clear from the decision that the ALJ completely rejected it, and Mr. Sitsler does not argue otherwise. He is correct that the ALJ did not expressly consider all of the relevant factors in rejecting Dr. Mease's opinion, but the ALJ was not required to do so. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The question for this court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to Dr. Mease's opinion and the reasons for that weight. *See Hamlin*, 365 F.3d at 1215. In addition to the ALJ's findings regarding claimant's motivation to obtain disability paperwork from Dr. Mease and the lack of recent treatment notes, the ALJ concluded that the doctor had relied heavily and uncritically on Mr. Sitsler's subjective reports of his symptoms and limitations, which the ALJ had separately determined were not credible. This is a legitimate reason for discounting the weight given to a medical opinion. *See Oldham*, 509 F.3d at 1259 (noting ALJ discounted medical opinions based on claimant's "highly unreliable" statements made to the doctors). But we have already concluded that the ALJ did not properly evaluate Mr. Sitsler's credibility. Therefore, because the ALJ tied his rejection of Dr. Mease's opinion to his flawed assessment of claimant's credibility, the ALJ's evaluation of the treating

-13-

physician's opinion is likewise flawed.[3]  Accordingly, after a proper evaluation of Mr. Sitsler's credibility on remand, the ALJ may be required to reweigh Dr. Mease's medical opinion based on the relevant factors.

Mr. Sitsler also contends that the ALJ erred in evaluating Dr. Krishnamurthi's medical opinion and Dr. Smith's MRFCA.  We agree.  An ALJ is required to evaluate a medical opinion from a non-treating physician using the same factors applicable to treating physician opinions.  *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003).  As noted, at the hearing Dr. Krishnamurthi provided an RFC opinion, which the VE construed as allowing for a reduced range of light work and a full range of sedentary work.  In the decision, the ALJ described some of Dr. Krishnamurthi's testimony and recited the doctor's opinion.  But the ALJ did not apply the relevant factors or articulate what weight he afforded Dr. Krishnamurthi's opinion.  Dr. Smith completed the MRFCA concluding that Mr. Sitsler had several marked limitations, but the ALJ did not mention the MRFCA in the decision.

While Mr. Sitsler is correct that the ALJ did not properly evaluate these medical opinions, we conclude that the errors were harmless.  Even if the ALJ had explicitly assigned controlling weight to these medical opinions, no

---

[3]     We note that, in contrast to this case, the claimant in *Oldham* did not challenge the ALJ's negative credibility determination.  *See* 509 F.3d at 1257 (noting it would have been futile for claimant to challenge that determination).

reasonable fact finder could have determined that Mr. Sitsler was disabled. Based on the material that the ALJ did consider, including Dr. Krishnamurthi's RFC opinion and the VE's testimony that addressed the limitations in the MRFCA, "no reasonable administrative fact finder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). However, in light of our remand of this case for further consideration, we remind the ALJ to heed the requirement to evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(d) & 416.927(d) ("Regardless of its source, we will evaluate every medical opinion we receive.").

## Failure to Ask Proper Hypothetical at Step Five

Citing the VE's testimony, the ALJ determined at step five that Mr. Sitsler retained the ability to perform other available work with his RFC and therefore was not disabled. This analysis is undercut by the ALJ's error in assessing Mr. Sitsler's credibility. A proper determination of the weight to be given claimant's subjective claims of pain and other symptoms underlies a proper finding regarding his RFC. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009).

Regarding the ALJ's reliance on VE testimony at step five, we note for consideration on remand Mr. Sitsler's correct assertion that the ALJ never asked the VE a hypothetical question that included claimant's vocational factors–his age, education, and work experience–as well as all of the limitations in his RFC.

-15-

Nor did the ALJ ask the VE whether his testimony was consistent with the DOT. We caution the ALJ that a proper hypothetical question relating with precision all of the claimant's impairments is required in order for a VE's testimony to constitute substantial evidence to support the decision. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991).[4] Moreover, an ALJ must inquire about and resolve any conflicts between a VE's testimony regarding available jobs and the descriptions of those jobs in the DOT. *See Poppa*, 569 F.3d at 1173.

---

[4]    We echo the magistrate judge's comments regarding the ALJ's approach to eliciting VE testimony in this case:

> The Court is . . . faced with a transcript of a hearing where both a medical expert and a vocational expert testified, and the ALJ never presented a full hypothetical to the VE that matched the RFC that he later found in his decision. [T]his is not an optimal way for disability hearings to proceed . . . . A complete question paired with a complete answer in the transcript is highly desirable. The undersigned understands that at times the RFC determinations are extensive in their detailed findings and that resort to forms that have been previously completed by experts, or, in this case, to testimony of the medical expert, is a tempting shortcut. That shortcut too often leaves the reviewing court with difficulty in determining if the people sitting in the hearing room all were asking questions, giving testimony, and listening to testimony regarding the same hypothetical RFC. If the reviewing court cannot meaningfully review the proceedings below, then it is forced to find that the record does not contain substantial evidence supporting the ALJ's decision.

Aplt. App., Vol. 1 at 58.

## Conclusion

The judgment of the district court is REVERSED and REMANDED with instructions to REMAND the case to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court


John C. Porfilio
Senior Circuit Judge